[No. 44154.   En Banc.   February 10, 1977.]

WILLARD W. JONES, *as Administrator, Respondent,* J, Y. HOLLINGSWORTH, ET AL, *Petitioners,* v. HOWARD HOLLINGSWORTH, ET AL, *Respondents.*

*Winston, Cashatt, Repsold, McNichols, Connelly & Driscoll (Miller, Anderson, Nash, Yerke & Wiener* and *Grant T. Anderson,* of counsel), for petitioners.

*Lycette, Diamond & Sylvester, Josef Diamond,* and *Simon Wampold,* for respondents.

HAMILTON, J.—This appeal concerns the interpretation of a condition precedent to a stipulation of settlement.

Petitioners, J. Y. Hollingsworth, Max Hollingsworth, Fred Hollingsworth, and Elaine Bollam (formerly Elaine Curtis), and respondent, Howard Hollingsworth,[1] are the

[1]Oma C. Hollingsworth, Howard's wife, is also named as a respondent. One of the issues raised by respondents at trial and before the Court of Appeals was the lack of Oma Hollingsworth's signature on the stipulation of settlement. This issue

five children of the deceased, Claude Hollingsworth, who died December 13, 1964. On March 5, 1964, Claude Hollingsworth transferred approximately $261,000 in stocks and a joint venture interest to respondent. Respondent, except for a few minor bequests, is the beneficiary of Claude Hollingsworth's last will and testament dated June 1, 1964. After respondent had entered the will for probate, petitioners intervened and sought to have the will and the inter vivos transfer set aside.

The day before the will contest was to go to trial, petitioners and respondent entered into a stipulation of settlement. The stipulation provided that the inter vivos transaction was valid, that the will was invalid, and that, after payment of expenses of administration, attorney fees, estate taxes, and respondent's personal income taxes, the remainder of the estate was to be divided among the petitioners and respondent, giving a 1/5th share to each. The stipulation contained the following provisions:

RECITALS:

. . .

4. The Internal Revenue Service is asserting additional estate tax liability against the Estate of Claude Hollingsworth upon the premise that the intervivos [sic] transfers were invalid and that the property was an asset of the estate at the time of death and is also asserting income tax liability against Defendants [respondent and his wife] covering a period of several years and arising primarily from gains realized by Proponent [respondent] from sales of the same property. The parties expect to be able to compromise, settle and make provision for the payment of any and all tax liability of the estate and of the Defendants in amount and manner acceptable to the parties to this Stipulation but such determination and provision for payment of any and all such tax liability

___

was not presented to this court for consideration. *See* CAROA 50(b)(3)(iii). Further, the stipulation of settlement primarily involves the disposition of Claude Hollingsworth's estate. Under Claude Hollingsworth's last will and testament, dated June 1, 1964, the assets of the estate would have become Howard's separate property. *See* RCW 26.16.010. Because the issues before this court involve only the actions of Howard Hollingsworth, when we speak of "respondent" in the text of the opinion we are referring to his actions only.

lies at the threshhold [*sic*] of any settlement of issues among the parties to this Stipulation and is a condition precedent to the consummation of any compromise and settlement of the issues among the parties hereto.

. . .

RELEASE FROM STIPULATION:

In the event the parties are unable to arrange with the Internal Revenue Service a determination of the estate tax liability of the Estate of Claude Hollingsworth and the income tax liability of Defendants and make provision for payment thereof in amount and manner acceptable to the parties to this Stipulation within ninety (90) days from the date of this Stipulation or within such additional time as the parties hereto stipulate in writing filed with the above entitled Court as a supplement to this Stipulation, this Stipulation shall be without any legal effect whatsoever, all parties shall be excused from performance hereunder, and no party hereto shall be prejudiced in anywise for having entered into this Stipulation.

Respondent's personal accountant was hired by the estate to negotiate with the Internal Revenue Service (IRS). As a result of his negotiations, the IRS dropped its claim for additional estate taxes and increased respondent's personal income taxes. In effect, the negotiations save the parties approximately $250,000 in taxes, because all taxes will be paid by the estate prior to distribution of each party's 1/5th share.

The tax compromise was presented to respondent in October 1971. He rejected this compromise and sought an additional deduction from his personal taxes. The IRS would not allow this additional deduction, because respondent was unable to produce adequate documentation.

In May 1972, the probate judge, upon application of the special administrator of the estate, ordered respondent to sign his personal income tax returns, which the accountant had prepared. Respondent refused, and the judge held him in contempt. The contempt order was not appealed. In August 1972, respondent filed a "Petition to Declare Stipulation Void and to Set Cause for Trial" on the basis the tax

compromise was unacceptable to him. A trial was held before another judge on the sole issue of whether or not the stipulation was valid.

The trial court found the stipulation valid and dismissed respondent's petition with prejudice. It concluded that the stipulation was binding on the parties because the tax compromise was acceptable to a reasonable person and because respondent acted in bad faith in rejecting the tax compromise.

Respondent appealed the dismissal to the Court of Appeals. *Jones v. Hollingsworth,* 14 Wn. App. 534, 543 P.2d 363 (1975). The Court of Appeals reversed, holding that "the express terms of the stipulation gave [respondent] the absolute right to reject the proposed tax compromise and when he exercised that right, the stipulation was by its terms 'without any legal effect whatsoever.'" *Jones v. Hollingsworth, supra* at 540. We granted review of that decision. *Jones v. Hollingsworth,* 87 Wn.2d 1001 (1976).

■ We begin our discussion by noting that the role of the court is to ascertain the parties' intentions and give effect to their intentions. *Grant County Constructors v. E.V. Lane Corp.,* 77 Wn.2d 110, 459 P.2d 947 (1969); *Felton v. Menan Starch Co.,* 66 Wn.2d 792, 405 P.2d 585 (1965). When the intent of the parties is clearly evident, courts have nothing to construe and must be governed by the intention of the parties as expressed in their written instrument. *Schwieger v. Harry W. Robbins & Co.,* 48 Wn.2d 22, 290 P.2d 984 (1955); *Silen v. Silen,* 44 Wn.2d 884, 271 P.2d 674 (1954).

In their stipulation of settlement, the parties expressly termed the acceptability of the tax compromise "a condition precedent to the consummation of any compromise and settlement. . . ." In the "release from stipulation" section of their stipulation, the parties stated that "[i]n the event the parties are unable to arrange . . . a determination . . . in amount and manner acceptable to the parties to this Stipulation . . . this Stipulation shall be without any legal effect whatsoever. . . ." The express language of

the stipulation clearly evidences the parties' intention to make the acceptability of the tax compromise a condition precedent which had to be met before the stipulation became a binding contract.[2]

■ The first issue which we must decide is whether the acceptability of the tax compromise should be judged objectively or subjectively. As a general rule, when contractual language is ambiguous as to whether the parties intended one party to have the unqualified option to terminate the contract in case of dissatisfaction, the contract is construed as giving the party the right to terminate only when he has reasonable grounds for dissatisfaction. *Gould v. McCormick,* 75 Wash. 61, 65, 134 P. 676 (1913). *See* Restatement (Second) of Contracts § 254 (1973). Further, when a contract provides that one party shall perform to the satisfaction of the other party, and the contract also provides guidelines within which the party must perform, the right to terminate exists only when the latter party's dissatisfaction is based upon reasonable grounds. *Yarno v. Hedlund Box & Lumber Co.,* 129 Wash. 457, 469, 225 P. 659, 227 P. 518 (1924); *Gould v. McCormick, supra* at 66–67. The present case does not fall within the above rules. The stipulation is not ambiguous. It provides that the tax compromise must be acceptable *to the parties* before the stipulation became a binding contract. *See McDougall v. O'Connell,* 72 Wash. 349, 353–54, 130 P. 362, 131 P. 204 (1913); *Tatum v. Geist,* 46 Wash. 226, 230, 89 P. 547 (1907). Further, the stipulation does not provide guidelines within which the accountant's negotiations with the IRS were to proceed. The parties clearly intended that the stipulation

---

[2]A condition precedent in the law of contracts may be a condition which must be performed before the agreement of the parties shall become a binding contract or it may be a condition which must be fulfilled before the duty to perform an existing contract arises. *See* 17A C.J.S. *Contracts* § 338 (1963); 5 S. Williston, *A Treatise on the Law of Contracts* § 666A, at 142 (3d ed. 1961). The condition precedent in this case clearly is one which must be met before the stipulation became a binding contract.

would not be binding if the tax compromise was unacceptable to any one party, regardless of whether that party had reasonable grounds for finding the tax compromise unacceptable. Thus, the determination of this case depends on whether the tax compromise was acceptable to respondent.

Most cases dealing with the issue of subjective satisfaction involve situations wherein one party must perform to the satisfaction of the other party. In those cases, the latter party's duty to perform is conditioned on his satisfaction with the former party's performance. Most courts require any dissatisfaction with the performance to be genuine, *i.e.,* made in good faith. *Commercial Mortgage & Fin. Corp. v. Greenwich Sav. Bank,* 112 Ga. App. 388, 145 S.E.2d 249 (1965); *Fulcher v. Nelson,* 273 N.C. 221, 159 S.E.2d 519 (1968); *Western Hills, Oregon, Ltd. v. Pfau,* 265 Ore. 137, 508 P.2d 201 (1973); *Jenkins Towel Serv., Inc. v. Tidewater Oil Co.,* 422 Pa. 601, 223 A.2d 84 (1966); *Atomic Fuel Extraction Corp. v. Estate of Slick,* 386 S.W.2d 180 (Tex. Civ. App. 1974). One reason for requiring good faith dissatisfaction is so that the contract will not be illusory. *See* 3A A. Corbin, *Corbin on Contracts* § 645, at 89–90 (1960); 5 S. Williston, *A Treatise on the Law of Contracts* § 675A, at 189–90 (3d ed. 1961). Another reason was stated by Judge Learned Hand in *Thompson–Starrett Co. v. La Belle Iron Works,* 17 F.2d 536, 541 (2d Cir. 1927):

> Such words as "fraud," "good faith," "whim," "caprice," "arbitrary action," and "legal fraud" appear to us to obscure the issue. The promisor may in fact be satisfied with the performance, but not with the bargain, in which case, of course, he must pay. . . . But if he does examine what has been done, and, after comparing it with the stipulations, in fact does not believe that it is truly described by them, the promisee, who necessarily has the burden, has not succeeded in fulfilling the condition, and cannot recover.

The Court of Appeals found the present case distinguishable from those cases involving one party's satisfaction with the other party's performance. It found that

neither party's promise (to settle the will contest) was conditioned upon the "acceptable" *performance* of the other party. Neither party received the benefit of the other's performance. Here the parties *expressly* agreed that an event other than the other party's *performance* was a *condition precedent* to settlement of the will contest.

*Jones v. Hollingsworth, supra* at 540. We do not believe this is a valid distinction upon which to hold that respondent had the unqualified right to reject the tax compromise. The parties entered into this stipulation intending it to become a binding contract if the tax compromise was in fact acceptable to them. If the tax compromise is acceptable to respondent, he does not have the absolute right to reject it and render the stipulation inoperative.

Although prior decisions of this court have stated that contracts may give one party the absolute and unqualified option to terminate the contract in case of dissatisfaction, these cases have assumed that the party was in fact dissatisfied. *See Yarno v. Hedlund Box & Lumber Co., supra* at 469–70; *McDougall v. O'Connell, supra* at 353–54; *Tatum v. Geist, supra* at 229–30. These cases have not rejected the requirement of good faith dissatisfaction. In fact, this court has stated that all contracts contain an implied covenant of good faith. *Miller v. Othello Packers, Inc.,* 67 Wn.2d 842, 844, 410 P.2d 33 (1966). *See* Restatement (Second) of Contracts § 231 (1973).

At the trial respondent testified that the tax compromise was unacceptable to him, because the IRS, in computing his personal income taxes, did not consider certain property and investment losses. The trial court found that the accountant had presented the tax compromise to respondent on at least three occasions, and respondent had never brought these possible deductions to the accountant's attention. The trial court specifically found that respondent refused to accept the tax compromise "with the sole object and purpose of frustrating the stipulation he had entered into for settlement. . . ." Finding of fact No. 10. The trial

court further found that respondent "acted in bad faith, for the sole purpose of undoing what he had previously done by signing the stipulation. . . ." Finding of fact No. 14.

Because respondent rejected the tax compromise not because he, in fact and in good faith, found the tax compromise unacceptable, but because he later decided he had made a bad bargain, the law will regard him as finding the tax compromise acceptable. *See Thompson–Starrett Co. v. La Belle Iron Works, supra* at 541; *Norwood Hosp., Inc. v. Howton,* 32 Ala. App. 375, 26 So. 2d 427 (1946); 5 S. Williston, *A Treatise on the Law of Contracts* § 675A, at 203–04 (3d ed. 1961). Therefore, the condition precedent has been met and the stipulation is binding on the parties. The trial court was correct in dismissing respondent's action to set the cause for trial.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is reinstated.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.